UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BRENDAN GULSTON,

                       Plaintiff,

         -against-                          **REPORT AND RECOMMENDATION**
                                                                      24 CV 4155 (EK) (CLP)

LE VERDE GROUP LLC *d/b/a Noise NYC*
and MANHAL IBRAHIM,

                       Defendants.
-----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

       On June 11, 2024, plaintiff Brendan Gulston commenced this action against defendants Le Verde Group LLC, d/b/a Noise NYC ("Le Verde") and Manhal Ibrahim, alleging claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (ECF No. 1). On March 20, 2025, plaintiff filed a First Amended Complaint alleging failure to pay overtime compensation in violation of the FLSA, 29 U.S.C. §§ 216(b) and 255(a) (First Cause of Action); failure to pay the applicable minimum wage and overtime compensation in violation of the NYLL and N.Y. Comp. Codes R. & Regs. tit. 12 §§ 142-2.1 and 142-2.2 (Second and Third Causes of Action); failure to furnish wage notice and wage statements as required by NYLL §§ 195(1) and (3) (Fourth Cause of Action); and failure to pay spread-of-hours pay as required by the NYLL (Fifth Cause of Action). (FAC[1]).

       Despite proper service,[2] defendants failed to respond to plaintiff's First Amended Complaint, and a default was entered by the Clerk of Court on June 16, 2025. (ECF No. 21).

---

     [1] Citations to "FAC" refer to the plaintiff's First Amended Complaint, filed March 20, 2025. (ECF No. 14).

     [2] According to the Affidavits of Service filed with the Court, defendant Ibrahim was served by personal service on an individual of suitable age and discretion residing in defendant's usual place of abode (ECF No. 17), and Le Verde was served on April 1, 2025, by service upon the New York Secretary of State (ECF No. 18).

1

Currently pending before this Court is plaintiff's motion for default judgment filed June 26, 2025 (ECF No. 22), which was referred to the undersigned for a report and recommendation by United States District Judge Eric R. Komitee (Order, dated July 2, 2025).

## FACTUAL BACKGROUND

Plaintiff alleges that he was employed by defendants as a retail worker from around January 11, 2023 to March 1, 2024. (FAC ¶¶ 4, 12). Defendant Le Verde is a limited liability company with its principal place of business located at 4612 Fifth Avenue, Brooklyn, N.Y. 11220. (Id. ¶ 5). Defendant Ibrahim is alleged to be an owner or member of Le Verde, who exercises sufficient control over Le Verde's day-to-day operations to be considered an employer under the FLSA and NYLL. (Id. ¶ 8). Defendant Ibrahim is also alleged to have the ability to hire and fire employees, set their pay, and set their work schedules. (Id. ¶¶ 9-11).

According to plaintiff, he generally worked seven days a week from 9:00 a.m. to 9:00 p.m. with no breaks, for a total of 84 hours per week. (Id. ¶ 15). He claims that he was paid $1,500 per week, and was never provided with a wage notice or wage statement. (Id. ¶¶ 14, 16, 18). Plaintiff alleges that he was never paid one and a half times his regular rate of pay or the applicable minimum wage for hours worked in excess of 40 in a week. (Id. ¶ 17). When plaintiff asked for documentation from defendants regarding his wages, defendants retaliated by terminating plaintiff's employment. (Id. ¶ 19).

## DISCUSSION

I.  Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil

Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  Id.  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an "extreme sanction," it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 137 v. Frank Torrone & Sons, Inc., No. 15 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, considering the "oft-stated preference for resolving disputes on the merits[,]" default judgments are "generally disfavored[,]" and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the claims were adequately pleaded in the complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default

3

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); (2) "whether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023) (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992)), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023); and (3) the amount of money potentially involved – "the more money involved, the less justification for entering the default judgment," id. Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish his entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, the plaintiff must first establish the defendant's liability as a matter of law, for a defaulting defendant is not considered to have admitted to any legal conclusions. Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts

4

establish the defendant's liability on each cause of action asserted. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In doing so, however, the Court draws "all reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating the defendant's liability, the plaintiff must also establish his entitlement to damages to a "reasonable certainty." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). In the context of a default judgment brought for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83-84.

In this case, while it is beyond dispute that defendants are in default, the Court has reviewed the allegations in the First Amended Complaint and concludes that the facts alleged in the complaint are insufficient to state a valid cause of action under the FLSA, and fail to establish the facts necessary to assert standing under the Wage Theft Prevention Action.

## II. FLSA Claims

To establish a claim under the FLSA, a plaintiff must prove the following: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a)); see also Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985).

5

As to the first requirement, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. § 203(s)(1)(A).

In the Complaint, plaintiff alleges that the defendants are employers within the meaning of the FLSA. (FAC ¶¶ 5, 8). Plaintiff further alleges that at all relevant times, the corporate defendant maintained multiple locations and employed eleven (11) or more employees. (Id. ¶ 7). However, the only allegation with respect to the annual gross volume of sales or the defendants' involvement with interstate commerce is paragraph No. 6, which alleges: "Upon information and belief, **S.C. Management** has an annual gross volume of sales in excess of $500,000, and engaged [sic] in interstate commerce." (Id. ¶ 6 (emphasis added)).

Nowhere else in the First Amended Complaint is there any mention of "S.C. Management" or what relationship, if any, it has with the named defendants. There is also no other allegation in the First Amended Complaint that would establish the interstate nexus, which is a required element of a claim under the FLSA, as to the named defendants. Cf. Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint which simply restated the statutory definition of FLSA enterprise coverage to be sufficient to establish the interstate nexus because in that case, it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State").

6

In Fermin, the fact that the defendant operated a restaurant was critical to the court's decision that it engaged in interstate commerce for FLSA purposes. The restaurant context is distinguishable from the retail context: whereas Fermin and its progeny have established that restaurants necessarily engage in interstate commerce, whether or not a retail store engages in interstate commerce depends on what sorts of goods and products it handles. While it is extremely unlikely that all of the ingredients and machinery used in a professional kitchen are all sourced from within New York state, it is conceivable that a retail store might only sell goods made in the state.

Here, even were the Court to substitute "Le Verde" for "S.C. Management," the FAC fails to allege enough facts for the Court to ascertain what sorts of goods or products the corporate defendant handles and, relatedly, whether the corporate defendant engaged in interstate commerce. At the inquest hearing, plaintiff stated that the corporate defendant operated a cannabis dispensary where plaintiff was employed as a retail worker. Given the federal restrictions on the possession, movement, and sale of cannabis, it is conceivable that defendants' products were all sourced from within New York state. However, none of these details can be found in the FAC. While the pleadings may set forth claims under the NYLL, plaintiff's failure to allege the interstate nexus raises jurisdictional questions as to whether plaintiff can proceed in federal court.

Thus, the Court respectfully recommends that the motion for default judgment be denied and that, in the absence of an amended pleading sufficiently alleging the requisite element of interstate commerce, the case should be dismissed for lack of subject matter jurisdiction.

### III. Wage Theft Prevention Act Claims

The Court further notes that there are deficiencies in plaintiff's pleadings with respect to the Wage Theft Prevention Act claims – namely, plaintiff has failed to allege facts necessary to

7

establish standing to bring such claims. The Supreme Court explained in TransUnion LLC v. Ramirez, that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. 413, 426 (2021).  The Supreme Court clarified that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. at 427 (emphasis in original).  Applying TransUnion to WTPA claims, the Second Circuit in Guthrie v. Rainbow Fencing Inc. recently declared that in order to bring a claim under Section 195 of the NYLL, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." 113 F.4th 300, 308 (2d Cir. 2024); see, e.g., Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (finding standing under the WTPA where plaintiff alleged defendants' failure to provide her with accurate wage statements meant she did not know about and could not correct deductions and discrepancies in her pay until years later).  Thus, after Guthrie, alleging only a statutory violation of the WTPA is insufficient.  See, e.g., Jaramillo v. Latino Regal Corp., No. 19 CV 3104, 2024 WL 4648135 (E.D.N.Y. Sept. 4, 2024).

Here, plaintiff has simply alleged facts demonstrating a statutory violation but has not alleged any injury-in-fact flowing from that violation.  If permitted to file a further amended pleading, the Court recommends that plaintiff be allowed to amend the factual allegations relating to the WTPA.

## CONCLUSION

As set forth above, the Court respectfully recommends that plaintiff's motion for default judgment be denied and that, in the absence of an amended pleading sufficiently alleging the element of interstate commerce required to state a valid cause of action under the FLSA, the case

should be dismissed for lack of subject matter jurisdiction.  Should plaintiff be permitted to file a further amended pleading, plaintiff should also be allowed to amend the factual allegations relating to the WTPA to explain how he suffered an injury-in-fact flowing from the statutory violation.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court by January 19, 2026.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file proof of such service on the record within one week of the date of this Report.

**SO ORDERED.**

Dated: Brooklyn, New York
January 3, 2026

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

9